UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

     Respondent

VS.                                                        CR. 97-0082-(SEC)

MANUEL GARCIA TORRES

        Petitioner      /

**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONER'S HABEAS CORPUS MOTION
TO VACATE, SET ASIDE OR CORRECT
SENTENCE PURSUANT TO 28 USCA § 2255**

COMES NOW, MANUEL GARCIA TORRES, The Petitioner (hereinafter Petitioner or Garcia Torres), pro se and respectfully moves this Honorable Court pursuant to 28 USCA § 2255 to vacate, set aside, or correct his sentence and/or conviction hereto imposed. As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant cause constitutes a denial of Petitioner's Due Process and Sixth Amendment rights as guaranteed by the United States Constitution.

### JURISDICTION

The District Court had original jurisdiction over this criminal case pursuant to 18 USC 3231, which vest in the United States District

Court jurisdiction over offenses against the laws of the United States.

The Court that has sentenced Garcia-Torres may review the sentence and/or conviction it imposed and correct the denial of a constitutional right violated by the imposition of the conviction and sentence itself. This statutory right under § 2255 is not merely to a federal forum but to provide a full and fair consideration of the constitutional claims. Kaufman v. U.S., 394 US 217(1960).

### EXCUSABLE ERROR

Petitioner is a layman at law, therefore as a pro-se litigant, he invokes the excusable error analysis of Haines v. Kerner, 404 US 519 (1972), where this Court is required to hold Petitioner's pleading to a less stringent standard than pleadings drafted by a lawyer. Lema v. U.S., 987 F.2d. 48, 54 n.5(1st Cir. 1993).

### STATEMENT OF THE CASE

On December 17, 1997, a grand jury sitting in the District of Puerto Rico returned a superseding indictment charging, inter alia, that from in or about the summer of 1994 to no earlier than in or about June 1997, 79 individuals, including the Petitioner Manuel Garcia-Torres conspired to possess with the intent to distribute cocaine, heroin, and marijuana (Count one) and that they and 28 others conspired to launder money (Count two).

Trial began on October 6, 1998 before the Honorable Salvador Casellas. Motions for judgement of acquittal were made at the close of the Government's case. (T.T. 12/8/98, pg. 18, 61-84) and renewed at the close of the case(T.T. 12/14/98, pg. 60-61). The Court denied

the motion except as to a portion of the money launder count. (T.T.
12/8/98, pg. 119-120). The denials were reaffirmed at the close of
the case (T.T. 12/14/98, pg. 61). The jury returned a verdict of
guilty on both counts.

Petitioner was sentenced on December 19, 2001, to a term of 20
years on count one and twenty years on count two, both terms to be
served consecutively, to be followed by three years for count one and
three years for count two of supervised release to be served concur-
rently. A timely notice of appeal was filed on December 19, 2001.

The opinion and judgement by the Court of Appeals for the First
Circuit is published U.S. v. GARCIA-TORRES, 341 F.3d. 61 (1st Cir.
2003). On September 11, 2003, Petitioner filed a petition for rehear-
ing en banc. On September 25, 2003, the Court of Appeals for the
First Circuit denied the petition in an unpublished opinion.

On December 19, 2003, Petitioner filed a Petition For A Writ Of
Certiorari to the United States Supreme Court.

On January  2004, Petitioner's Writ of Certiorari was denied. This
§ 2255 now ensues.

## STATEMENT OF FACTS

The charges and conviction in this case are the result of an alleg-
ed investigation of the drug trafficking activities of Ms. Angela Ayala-
Martinez and Jurge Serrano-Alicea, within the Southern part of Puerto
Rico. According to authorities, the organization was responsible for
distribution of multi-kilograms of quantities of controlled substances,
(i.e. cocaine, heroin, and marijuana) and money laundering within the

iii

Ponce area of Puerto Rico. As a result of said investigation, Ayala-Martinez was singled out as being the leader of the criminal organization in that area.

During the trial, the Government presented its case-in-chief against Mr. Manuel Garcia-Torres exclusively through the testimony of six-alleged co-conspirators, who alleged that they observed or been involved with drug dealings and murders involving Mr. Garcia-Torres.

Following the trial, on December 18, 1999, the Petitioner was found guilty as to Count one and two of the superseding indictment. **The** District Court ordered the presentence report. The U.S. Probation Officer Maria Luisa Monge prepared the Petitioner's PSR and timely objections were submitted.

The presentence report for Petitioner recommended a base offense level 43 pursuant to USSG § 2D1.1(d)(1), because it was alleged that at least one person was murdered in connection with the drug conspiracy. The PSR also recommended a two point enhancement for a defendant's possession of a firearm. The PSR's while not making any specific determination concerning the amounts and type of drugs involved in the conspiracy, noted that the conspiracy trafficked in "multi-kilograms" quantities of cocaine in connection with group one. Group two include a base offense level of 23 pursuant to 2S1.1 for laundered funds. A three level increase was recommended because of what the PSR believed what the Petitioner knew or believed about the laundered funds. No recommendations were requested as to the value of funds laundered.

The PSR also noted that Manuel-Garcia-Torres was involved in murders alleged in connection with the conspiracy and recommended a § 2A1.1 cross reference.

iv

After various filings by both parties on variuous issues and re-
questa for continues, the sentencing hearing was finally set for
November 30, 2000. However on June 26, 2000, the Supreme Court decided
the monumental case of Apprendi v. New Jersey supra, which stood for
the proposition that "other than the fact of a prior conviction, any
fact that increases a penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury and proven beyond a
reasonable doubt". The Court had both parties memorandums of law re-
garding the effects of the Supreme Court decision in Apprendi on the
sentencing options available to the Court regarding the Petitioner
and his co-conspirators.

Finally the sentencing was set for December 19, 2001 before the
Honorable Judge Salvador Casellas. During the sentencing hearing after
hearing both sides of the applicability of Apprendi, the Court ruled
on the side of caution stating that it would be error to use the mur-
ders to enhance Petitioner's sentence without a specific finding from
the jury beyond a reasonable doubt. Thus the Court eliminated any
cross-reference under 2A1.1.

Subsequently, the Court on the basis of the revised PSR, the PSR
concluded that Petitioner was responsible for 150 kilograms or more
of cocaine and recommended a base offense level of 38 for a conspiracy-
wide calculation, and of course relevant conduct; two points was assess-
ed for a §2D1.1(b)(1) enhancement; four points was assessed for Peti-
tioner's role in the offense as a leader; and two points was assessed
by the PSR for Petitioner's obstruction of justice findings by the
Court. The final recommendation for group one was 46, with a guideline
range of LIFE. Group two involved the money laundering conviction which

began with a base offense of 23, however the PSR recommended three
points as per § 2S1.1(b)(1) and four points were recommended for
Petitioner's role in that offense. The total base offense recommend-
ation for group two was 30.

After the sentencing Court had determined the offense level (in-
cluding all upward and downward adjustment) the Court fixed the total
punishment within the applicable guideline sentencing range, as LIFE.
The Court held that if one of the underlying counts of conviction has
a statutory maximum sentence greater than or equal to the toatal punish-
ment the Court will then impose the total punishment on that count, with
sentences on any other counts. USSG § 5G1.2(d).

At Manuel- Garcia Torres sentencing, the Court arrived at a base
offense level of 43, with a sentencing guideline range of LIFE. Cross-
referencing  to criminal history category of III. The Court deter-
mined that within that range, a total punishment of Life was appro-
priate "due to all the facts of the case, the Petitioner's partici-
pation, his disregard for life, for murders and all of the other
incidents that this Court saw throughout the three month trial".
Having thus fixed the total punishment at LIFE, the District Court
felt obligated under 5G1.2(d), to impose a 20-year sentence (the
statutory maximum) on each count, the sentences to run concurrently.
Also 3 years supervised release was assessed on both counts, to be
served concurrently.

ISSUES PRESENTED FOR REVIEW


ISSUE ONE

> WHETHER THE TRIAL COURT ERRED IN SENTENCING THE
> PETITIONER ON COUNT ONE OF THE SUPERSEDING INDICTMENT
> WHICH CHARGED PETITIONER WITH KNOWINGLY CONSPIRING TO
> POSSESS COCAINE, HEROIN AND MARIJUANA WITH THE INTENT
> TO DISTRIBUTE SAME


ISSUE TWO

> WHETHER THE SUPREME COURT'S DEFINITION OF STATUTORY
> MAXIMUM AS DEFINED IN BLAKELY v. WASHINGTON CLEARLY
> SHOWS THAT PETITIONER'S SENTENCE WAS IMPOSED IN
> VIOLATION OF THE LAW


ISSUE THREE

> WHETHER THE TRIAL COURT ERRED BY FAILING TO MAKE
> SPECIFIC FINDINGS AS TO THE AMOUNT OF DRUGS
> ATTRIBUTABLE TO PETITIONER WITHOUT MAKING SPECIFIC
> INDIVIDUALIZED FINDINGS AS TO DRUG AMOUNT TO
> PETITIONER

ISSUE ONE

> WHETHER THE TRIAL COURT ERRED IN SENTENCING THE
> PETITIONER ON COUNT ONE OF THE SUPERSEDING
> INDICTMENT WHICH CHARGED PETITIONER WITH KNOWINGLY
> CONSPIRING TO POSSESS COCAINE, HEROIN, AND MARIJUANA
> WITH THE INTENT TO DISTRIBUTE THE SAME

Count One of the superseding indictment charged Petitioner Manuel Garcia-Torres and 78 others in a conspiracy to distribute cocaine, heroin and marijuana in violation of 21 USC § § 841(a)(1) and 846 respectively. The superseding indictment reads in relevant part:

> the defendants did herein, knowingly, willfully, unlawfully,
> and intentionally combine, conspire, confederate and agree
> with others and with divers other persons to the grand jury
> known and unknown to commit offenses against the United States,
> to wit to knowingly and intentionally possess with the intent
> to distribute and distribution of multi-kilogram amounts of:
> (a) cocaine, a schedule II narcotic drug controlled substance;
> (b) heroin, a schedule I narcotic drug controlled substance; and
> (c) marijuana, a schedule I controlled substance, that is conspiracy
> to violate Title 21 USC § 841(a)(1). All in violation of Title 21
> USC § 846.

The District Court instructed the jury that they could find the defendants guilty on Count one **if the jury determined** that the defendants had conspired to possess with the intent to distribute a controlled substance. i.e. cocaine, heroin, marijuana (T.T. 12/16/98, pg. 139-143). In the second part of those instructions regarding Count one, the Court further instructed the jury that cocaine, heroin and marijuana were controlled substances. Id. 143. The Court submitted a general instruction to the jury, as a by-product of the Courts instruction, the jury returned a general verdict, finding the Petitioner and other defendants charged in this count one guilty of conspiracy.

1

In this cause, the Petitioner was to be sentenced on December 19, 2001. Although found guilty by a pre-Apprendi jury verdict, the principles of Apprendi v. New Jersey applied to this sentencing. The Court conceded the error in the jury instructions regarding the multi-object drug conspiracy and the general verdict (S.T. 12/19/01, pg. 28-29), but held that, in the absence of a drug amount and kind in the indictment, which was also absent from the deliberating jurors consideration, the Court still retained the discretion to sentence the Petitioner to the catch-all provisions of 21 USC § 841(b)(1)(C) and impose the stautory maximum of 20 years. Id. at 29, or 240 months. The problem here is that, the three different drug types carry vastly different penalties. Even though the probation department converted the amount of cocaine, heroin, and marijuana attributed to the Petitioner into marijuana for the purposes of reestablishing the appropriate base offense level, no attempt was made by the Court to determine whether the jury found the Petitioner guilty of cocaine, heroin, marijuana or all three, as the object of the conspiracy.

Circuit Courts who have visited this issue of a multi-object conspiracy with a general verdict of guilty, like here, have firmly spoken that the District must vacate the sentence and remand for re-sentencing, because in the absence of a special verdict without the jury identifying the object of the conspiracy, it is impossible for the Court to determine with any certainty the quantity of quality of the drug which should have been the object of the conspiracy. See U.S. v. Melvin, 27 F.3d. 710, 715(1st Cir. 1994); U.S. v. Allen, 302 F.3d. 1260(11th Cir. 2002); U.S. v. Rhymes, 196 F.3d. 207(4th Cir. 1999); U.S. v. Dale, 178 F.3d. 429(6th Cir. 1999). This is particularly important because the penalties vary between the three different drug types. Although not a multi-object drug conspiracy the First Circuit Court of Appeals visited this issue in U.S. v. Melvin, 27 F.3d. 710(1st Cir. 1994). In Melvin, the defendants were charged with, and convicted of, possession of a

2

firearm in connection of a crime of violence. However, the jury verdict failed to designate which of several firearms alleged to be in their possession were involved. The potential penalties in that case ranged from possession of machine guns carrying a mandatory minimum 30 year sentence, to possession of handguns, carrying a mandatory minimum 5 year sentence. The Appellate Court resolved the sentencing issue by affirming the defendant's sentence as the lowest it could be, that of a conviction for possession of a handgun. Id. 27 F.3d. at 715.

U.S. v. Allen, 302 F.3d. 1260(11th Cir. 2002) is also a multi-drug conspiracy involving cocaine, and marijuana. The defendants in Allen were charging possession with intent to distribute cocaine, and marijuana in one count in a multi-count indictment. The defendant went to trial and was convicted on count one of the superseding indictment consisting of the two different drug types. The verdict returned by the jury was a general one and did not identify which drug was the object of the conspiracy. The defendants in Allen was sentenced to the most severe drug, cocaine, however, the Eleventh Circuit vacated the defendant's sentence on count one, and remanded for re-sentence, because of the jury's failure to identify the object of the multi-drug conspiracy, and their sentence exceeded the statutory maximum for the lowest drug punishable, the marijuana. Id. 302 F.3d. at 1275-1276.

The Fourth Circuit vacated a sentence and remanded for resentencing in the case of U.S. v. Rhynes, 196 F.3d. 207(4th Cir. 1999). The Rhynes case bears a factual resemblance to the case at bar. Like here, the defendants in Rhynes were charged in a single count with a multi-object drug conspiracy charging cocaine, crack, heroin, and marijuana. The District Court in Rhynes submitted a general verdict as to the conspiracy count, here, the District Court explained that for them (the jury) to find the Petitioner guilty of conspiracy, the Government was required to prove beyond a reasonable doubt that he possess with intent to distribute controlled

3

substances; and subsequently just instructed the jury what were the controlled substances in this case. (T.T. 12/18/98, pg. 139-143), i.e., cocaine, heroin, and marijuana. Like the defendants in Rhynes, the government never requested a special verdict as to the object of the conspiracy. The Rhynes court concluded, in the absence of a special verdict, that it could not sentence beyond the statutory maximum sentence for the least serious of the three alleged controlled substances, i.e., marijuana. Rhynes, 196 F.3d. at 329. Because the U.S. v. Rhynes brings a factual similiarity to the facts of this case, this Court should find Rhynes persuasive authority and invoke and award Petitioner the same relief.

Accordingly, as they must be appied here Melvin, Allen, Rhynes and Dale prohibited the District Court from imposing a sentence in excess of the statutory maximum for the least punished object on which the conspiracy conviction could have been based, marijuana.

ISSUE TWO

> WHETHER THE SUPREME COURT'S DEFINITION OF STATUTORY MAXIMUM AS DEFINED IN BLAKELY v. WASHINGTON CLEARLY SHOW THAT PETITIONER'S SENTENCE WAS IMPOSED IN VIOLATION OF THE LAW

Petitioner contends that the sentencing Court clearly erred when imposing the statutory maximum sentence of 20 years in both counts one and two of Petitioner's superseding indictment. In the recently decided Supreme Court decision of Blakely v. Washington, infra, the Supreme Court defined the term "statutory maximum" as that term was used in Apprendi v. New Jersey, 530 US 466(2000), explaining that "Our precedent makes clear, that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring v. Arizona, 1225 S.Ct. 2428 ("the maximum he would received if punished according to the facts reflected

4

in the jury verdict alone".); Harris v. U.S., 536 US 545, 563(2002). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose **without** any additional findings. When a judge inflict punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment", and the judge exceeds his proper authority.

### A). STATUTORY MAXIMUM FOR PETITIONER'S DRUG OFFENSE IN COUNT ONE

Prior to the sentencing in this cause, there was an intervening change in law, that required the sentencing Court to follow the holding of Apprendi v. New Jersey, 530 US 466(2000), which stood for the proposition that "any fact that increases a defendant's sentence beyond the statutory maximum must be charged in the indictment, submitted to the jury and found by the jury beyond a reasonable doubt". (S.T. 12/18/01, pg. 2-3).

The Petitioner raised at sentencing that the alleged murders were not found by the jury beyond a reasonable doubt, and that the drug quantities attributed to him were not properly found by the jury. (Id. at 3). After reviewing arguments from both the Government and the defendant, the Court held that Apprendi forbidded the use of alleged murders into the sentencing scheme, (2A1.1) without the benefit of a special finding from the jury regarding the murders (Id. at 3). The Court concluded that it would be error to use the murders to enhance the Petitioner's sentence. Id.

Regarding the multi-drug conspiracy count, where counsel's argument was **drug quantity** only, the Court stated Apprendi held that in order to sentence a defendant under § § 841(b)(1)(a) or 841(b)(1)(b) instead of § 841(b)(1)(c)'s catch-all statutory maximum of 20 years, the drug quantity had to be treated as an element of the offense charged in the indictment, submitted to the jury and proven beyond a

reasonable doubt.[1][2]Because drug amount was not charged in Petitioner's indict-
ment, submitted to the jury nor proven beyond a reasonable doubt, the Court held
that it could not impose a sentence pursuant to § 841(b)(1)(a) or § 841(b)(1)(b).
However based on the preponderance of the evidence and relevant conduct the Court
stated it still retained the discretion to sentence the petitioner to the
"statutory maximum" of the catch-all provision of § 841(b)(1)(c). Petitioner was
sentenced to twenty years on count one.

Petitioner states that the Court committed clear error when it imposed the
statutory maximum of twenty years pursuant to § 841(b)(1)(c), where the statutory
maximum as defined by Blakely v. Washington, 124 S.Ct. 25(2004) clearly identified
that statutory maximum as the maximum sentence the Court could impose without any
judicial fact findings.

While the Blakely court only addressed the Washington state sentencing scheme,
the manner in which the majority defined the "statutory maximum" should compel this
Court to conclude that its reasoning applies with equal force to the sentencing
guidelines.

In the case subjudice, Petitioner's indictment charged, in count one a multi-
object drug conspiracy, i.e., cocaine, heroin and marijuana. When the trial was
concluded, the jury found Petitioner guilty of the multi-object drug conspiracy
in what the law deems a general verdict. Melvin. The PSR without proof beyond a
reasonable doubt, stated that the object of the conspiracy was cocaine and recom-
mended a base offense level of 38, pursuant to § USSG 2D1.1(c) alleging that there

---

[1]Although the identity of the three drugs were charged in Petitioner's indictment,
and submitted to the jury, the jury never identified which drug was the object of
the conspiracy beyond a reasonable doubt.

[2]The PSR selected cocaine out of the 3 drugs as the object of the conspiracy.

was 150 kilograms or more of cocaine involved in the conspiracy. Two or more addi-
tional points were recommended as dangerous weapons were possessed by coconspira-
tors to carry out the commission of the offense. See § 2D1.1(c)(1). The PSR re-
commended 4 more points for the Leader role and 2 points were recommended for an
obstruction of justice enhancement. The final base offense level recommendation
was 43. The sentencing Court adopted the PSR's findings as its own, but due to the
Supreme Court ruling of Apprendi, the Court found that the drug amount was not
contained in the indictment, nor found by the jury and resorted to the catch-all
provision to impose a 20 year sentence pursuant to 21 USC § 841(B)(1)(C) only
because it could not impose a life sentence based on the Court's belief that the
Petitioner was involved in murders in connection with the offense of conviction.
Here, with the District Judge's judicial findings, Petitioner faced a base offense
level of 43 with a range of 360-Life. However, solely on the basis of the jury's
verdict, which did not identify the drug object of the conspiracy, by law, the
Court was required to impose a sentence consistent with the lowest penalty, i.e.,
marijuana. Moreover, because the only language in the indictment concerning drug
amount was multi-kilograms the Court can certainly construe this to mean more than
two kilograms, in the absence of specific fact finding by the jury, Thus without
any additional findings by the Court, Petitioner's base offense level would have
been 12, for 2.5 kilograms to 5 kilograms of marijuana based on the preponderance
of the evidence, with a sentencing range of 15-21 months. Although the sentencing
Court held that the "statutory maximum" for Apprendi purposes is the statute of
conviction (here § 841(b)(1)(c), Blakely's definition of "statutory maximum" as
"the maximum sentence a judge may impose **solely on the basis of facts re-
flected in Petitioner's jury verdict**" 124 S.Ct. at 2537 suggest this con-
clusion was in error, because the Court imposed a 20 year sentence which far ex-
ceeded the maximum sentence that the District judge could have imposed simply
on the basis of the jury verdict, This directly parallels the

7

sentencing process held unconstitutional in Blakely.

Therefore, Petitioner states that the District judge's imposition of this sentence after determining the material sentencing facts by a preponderance of the evidence, rather than relying on a jury's determination of the facts beyond a reasonable doubt, violated Petitioner's Sixth Amendment rights as explained in Blakely.

### B). THE COURT EXCEEDED THE STATUTORY MAXIMUM FFOR THE MONEY LAUNDERING

The District Court's application of the Sentencing Guidelines is a two-fold process. U.S. v. Cali, 87 F.3d. 571, 573(1st Cir. 1996). First, the applicability and interpretation of the sentencing guidelines are reviewed de novo. Id. at 575. Second, the factual determination of the sentencing Court are given due deference to its application of the guidelines to the facts. Id.

Although the Petitioner's counsel somewhat raised the issue of sentencing Petitioner to the "statutory maximum" of the money laundering provision 18 USC § 1956, without making any particularized finding of facts before rejecting the PSR's determination that no increase to the base offense was warranted since the value of the funds laundered did not exceed $100,000, Petitioner is not prohibited from addressing the District Court's definition of statutory maximum as that term was defined in Blakely v. Washington, 124 S.Ct. 2531(2004), to the facts of this claim.

Petitioner's contention is that the Supreme Court's decision of Apprendi v. New Jersey, 530 US 466(2000) which stands for the proposition that "any fact other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt". Subsequently, on July 24, 2004, the Supreme Court decided the

seminal case of <u>Blakely v. Washington</u> after Petitioner's case was affirmed on direct appeal, and interpreted <u>Apprendi</u>'s definition of "statutory maximum", which establishes that his 20 year sentence on the money laundering count exceeded the "statutory maximum" permitted by the guidelines. If this contention is well taken, then Petitioner's increased punishment are based on judicial fact findings that the Court did not have the authority to impose. There can be no room for doubt that such a circumstance "inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify relief under § 2255". <u>Davis v. U.S.</u>, 417 US 333, 346-47(1974).

### THE FINDINGS BASED SOLELY ON THE JURY VERDICT

Count 2 of Petitioner's superceding indictment which charged the Petitioner with conducting financial transaction with the intent to promote a specified unlawful activity and knowing that the transactions are designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of the specified unlawful activity all in violation of 18 USC § 1956(a)(1). No dollar amount was specified in the indictment. The jury found the Petitioner guilty of this Count two.

The PSR recommended a base offense level of 23. !8 USC § 1956(a)(1)(A) as governed by USSG § 2S1.1(a)(1) involving the laundering of monetary instruments. The PSR also applied the specified offense characteristic, because the probation department believed that the Petitioner knew or believed that the funds were proceeds of an unlawful activity involving drug trafficking activities. A three(3) level increase was requested. §2D1.1(b)(1). 4 points were also recommended for a leadership role. The final recommended base offense level was 30 with a sentencing range of 121-151 months. Notwithstanding the PSR's recommendations the District Court imposed the statutory maximum of 20 years under 18 USC § 1956(a)(1).

9

The nub of Petitioner's claim is that, with the District Judge's factual findings, Petitioner faced an offense level of 26 with a sentencing range of 78-97 months, but the Court departed to the statutory maximum of 20 years to comport with the total punishment of 20 years in count one. However, solely on the basis of the Petitioner's guilty verdict without any additional findings, Blakely 124 S.Ct. 2537, his base offense level would have been 23 with a sentencing range of 57-71 months. Although Courts have held that the "statutory maximum" for Apprendi purposes is the statute of conviction, (here § 1956(a)(1),),Blakely's definition of "statutory maximum" as the maximum sentence a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant,**" 124 S.Ct. at 2537.

Here the jury found Garcia-Torres guilty of money laundering whether it was to promote or conceal is irrelevant for the purposes of this argument. On the basis of this verdict alone, the maximum sentence under the Guidelines that the District judge could have imposed-without any further findings-would have been 71 months, given a base offense level of 23. USSG 2S1.1(a)(1)$^{(3)}$. Instead the District Court imposed a 20 year sentence. The Court determined that the base offense level for count one, was 38. The Court then made a two-level adjustment for weapon possession, and arrived at a base offense level of 40. Cross-referencing to a criminal history category of III, the Court arrived at a sentencing range of 360-Life. The Court determined that within that range, a total punishment of life was appropriate "due to all the facts of the case".

Having fixed the total punishment at life for count one, the District Court felt obliged under § 5G1.2(d) to impose a 20 year sentence (the statutory maximum) for count two withstanding the fact that the specific offense characteristic only called at best an offense level of 30, and ran each 20 year sentence consecutive

(3) The PSR recommended no dollar value enhancement as the laundered funds did not exceed $100,000.

10

in order to achieve a final sentence that most closely approximated what the Court
believed to be the total punishment. Each of the 20 year sentences far exceeded the
maximum sentence that the District judge could have imposed simply on the basis of
the jury's verdict.

Therefore, the Supreme Court's decision in <u>Blakely v. Washington</u> clearly shows
that the District Court's definition of statutory maximum as that term was used in
<u>Apprendi</u> in imposing consecutive 20 year sentences on count one and two was plain
error.

### THE COURT'S IMPOSITION OF 20 YEAR SENTENCE ON COUNTS ONE AND TWO WAS PLAIN ERROR

The District Court's finding by a preponderance of the evidence, after weighing
multiple levels of hearsay testimony, that the Petitioner distributed multi-kilograms
of cocaine, and was involved in murders in connection with count one, and promoted
and/or concealed laundered fund in connection with count two was plain error.
First, deviation from a legal rule is error unless the ruled has been waived. <u>U.S.
v. Olano</u>, 507 US 725, 732-33(1993). As discussed above, the determination of the
Petitioner's base offense level (and two point upward enhancement for gun possession,
count one, and three point upward enhancement for what Petitioner knew or believed
about the laundered funds, count two) by the District judge employing a preponderance
of the evidence standard was error under <u>Blakely</u>.

Second, in determining whether the error was plain, the Court has explained
that it is sufficient for the error to be clear under the law as it exist at the
time of appeal. <u>Johnson v. U.S.</u>, 520 US 461, 468(1997)("Where the law at the time
of trial was settled and clearly contrary to the law at the time of the appeal, it
is not enough that an error be plain at the time of the appellate consideration").
It is clear after <u>Blakely</u> that increasing the Petitioner's punishment based on

facts not admitted by him or determined by a jury beyond a reasonable doubt was clearly contrary to his Sixth Amendment jury right.

For an error to effect "substantial rights" the error must have been prjudicial; It must have effected the outcome of the District Court's proceedings. <u>U.S. v. Olano</u>, 507 US 725, 734(1993). Petitioner did raise specific objections concerning the drug amount,[4] 150 kilograms or more of cocaine, and the Court's consideration of the alleged murders. The Court however, never made any findings regarding the amount of laundered funds involved. All the evidence in this regard was based on various dgrees of hearsay testimony for turncoat co-conspirators which contributed to the Court's preponderance of the evidence findings which led to the Court's imposition of statutory maximum of each of the two counts. It cannot be seriously disputed that the lower standard of proof affected the outcome of the Court's ultimate sentence.

Finally, the errors affected the fairness of Petitioner's proceedings. In discussing the fairness of the result in <u>Blakely</u>, the Court stated:

> Any evaluation of Apprendi's "fairness" to criminal defendants must compare it with the regime it replaced, in which a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment, See 21 USC § 841(b)(1)(A), (D), based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial from a report complied by a probation officer who the judge thinks more likely got it right than wrong. <u>Blakely</u>, 124 S.Ct. at 2542.

---

(4) The District concede the error of the general verdict and the lack of a specific drug kind or amount found by the jury but held that it still retained the discretion to determine kind and amount.

12

This is precisely what happen to the Petitioner. Although, Petitioner was found guilty at trial to only a multi-object drug conspiracy with no drug kind or amount identified by the jury's verdict and money laundering with no dollar value of the proposed funds laundered, the sentencing Court adopted the PSR recommendations as more right than wrong and imposed a significantly higher sentence based on the District judge's preponderance of the evidence findings.

Therefore, this Court should find that the District judge's imposition of this sentence after determining the material sentencing facts by a preponderance of the evidence, rather than relying on a jury's determination of the facts beyond a reasonable doubt, violated Petitioner's Sixth Amendment rights as explained in Blakely.

ISSUE THREE

> WHETHER THE TRIAL COURT ERRED BY FAILING
> TO MAKE SPECIFIC FINDINGS AS TO THE AMOUNT
> OF DRUGS ATTRIBUTABLE TO PETITIONER
> WITHOUT MAKING SPECIFIC INDIVIDUALIZED
> FINDINGS AS TO DRUG AMOUNT TO PETITIONER

Petitioner states that the District Court erred in imposing a 20 year sentence as to count one of the superseding indictment, without first making specific findings that he, rather than the charged multi-drug conspiracy, was accountable for a particular quantity or kind of drug. U.S. v. Colon-Solis, 354 F.3d. 101 (1st Cir. 2004).

At sentencing, Petitioner specifically raised the issue of the appointment of the drugs attributable to him. (S.T. 12/19/01, pg. 19). However, the Court defiantly stated that it retained the discretion to find Petitioner accountable as to the nature and amount of controlled substances attributable to him. (Id. at 28-29). Despite the fact that the Court recognized the error in the jury instruction, in

13

failing to ask the jury to specifically identify the object of the drug conspiracy. Thus, because the jury did not specifically identify a drug object of the conspiracy, the Court could not then make an individualized finding as to drug amount to Petitioner. This Court in the past U.S. v. Bradley, 917 F.2d. 601, 604(1st Cir. 1990) and now in the present U.S. v. Colon-Solis, 354 F.3d. 101(1st Cir. 2004) has held the Court's lack of such finding offensive to the Petitioner's sentencing proceedings, to trigger a statutory maximum to a particular co-conspirator. Derman v. U.S., 298 F.3d. 34, 43(1st Cir.) cert. denied 537 U.S. 1048(2002).

It is clear from the record that the District judge prescribed the drug amount and kind from a conspiracy wide perspective to trigger the statutory maximum pursuant to 21 USC § 841(b)(1)(C). However, that provision cannot be applied in this case without an individualized finding that the triggering amount (of whatever) was attributable to, or forseeable by him. Accordingly, this Court should find as the First Circuit did in Colin-Solis and remand for resentencing.

Respectfully submitted,

_Angel Manuel Garcia Torres_
Angel Manuel Garcia Torres   #14966-069
Federal Correctional Complex
P.O. Box 1033, Unit E
Coleman, FL  33521-1033

## CERTIFICATE OF SERVICE

I, MANUEL GARCIA-TORRES, Hereby certify that the statement of facts in the accompanying motion are true and correct to the best of my knowledge and the statements made on information and belief are true to the best of my knowledge and belief 28 USC § 1746.

Dated: January 30 , 2005

Respectfully Submitted

*Angel Manuel Garcia Torres*

Manuel Garcia-Torres

I, MANUEL GARCIA-TORRES, do hereby certify that a true copy of the motion enclosed, Motion under Title 28 U.S.C., Section 2255, has been sent via pre-paid first class mail to Sonia I. Torres-Pabon, Assistant U.S. Attorney, Torre Chardon, Room 1201, 350 Carlos Chardon Avenue, San Juan, Puerto Rico, 00918, on this 30th day of January 2005.

Respectfully submitted,

*Angel Manuel Garcia Torres*
Angel Manuel Garcia Torres
Reg. No. 14966-069
Federal Correctional Complex
P.O. Box 1033, Unit E
Coleman, FL  33521-1033

15